UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RUFUS DAVIS, individually and on behalf of all others similarly situated

                    Plaintiff,

vs.

WORLD NOMADS INC., TRIP MATE INC.,
NATIONWIDE MUTUAL INSURANCE COMPANY,

                    Defendants.
------------------------------------------------------------------X

Index No. 21-cv-1264

**CLASS ACTION COMPLAINT**

Plaintiff Rufus Davis, individually and on behalf of all others similarly situated, by his attorneys, MORRISON TENENBAUM PLLC, as and for his complaint against defendants World Nomads Inc. ("World Nomads"), Trip Mate Inc. ("Trip Mate") and Nationwide Mutual Insurance Company ("Nationwide;" collectively "Defendants") alleges as follows.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of all persons who paid for and/or obtained a travel protection insurance policy from the Defendants, and who had their claim for travel reimbursements due to COVID-19, related cancellations, delays, or interruptions denied.

2. On or about September 13, 2019, Davis booked a trip to Alaska scheduled to start on April 4, 2020 and end on April 11, 2020 (the "Trip"). On March 22, 2020, Davis applied for and was issued a travel insurance protection program from World Nomads, Plan Number N 300E, pursuant to which the Defendants agreed to, among other things, reimburse Davis for costs associated with the cancellation or delay of the Trip.

3. Prior to the April 4, 2020 Trip start date, COVID-19 and governmental orders issued in connection therewith forced Plaintiff to cancel his Trip.

4. As a result of that cancellation, Plaintiff incurred certain costs, including all payments made for the Trip, for which he made a claim under the policy.

5. In contradiction of the plain terms and conditions of the policy, Defendants failed and refused to honor their contractual obligations to reimburse Plaintiff for costs incurred due to the cancellation of Plaintiff's Trip.

6. Defendants have – on a uniform basis – failed and refused to reimburse their insureds under the policies for forfeited, prepaid, non-refundable, non-refunded, and unused payments incurred as a result of the cancellation, and/or delay of trips due to COVID-19 and/or associated governmental orders.

7. Plaintiff and members of the Class are entitled to reimbursements as contracted for under the policies and damages.

## THE PARTIES AND JURISDICTION

8. At all times relevant to this action, plaintiff Rufus Davis was an individual residing in the State of New York, County of New York.

9. Defendant World Nomads Inc. is an Oregon corporation registered to do business in New York, with its principal executive office in Sydney, Australia.

10. Defendant Trip Mate Inc. is a Kansas corporation registered to do business in New York, with its principal executive office in Kansas City, Missouri.

11. Defendant Nationwide Mutual Insurance Company is an Ohio corporation with its principal place of business in Columbus, Ohio.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because Plaintiff and at least one member

of the Class, as defined below, is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

13. This Court has personal jurisdiction over Defendants because, at all relevant times, they have engaged in substantial business activities, including the sale of policies, in New York. Defendants have, at all relevant times, transacted, solicited, and conducted business in New York through their employees, agents, and/or sales representatives, and derived substantial revenue from such business.

14. Pursuant to 28 U.S.C. §1391(a)(2) and (3), venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendants are subject to the Court's personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### a) The Travel Insurance Policy

15. In or about September 13, 2019, Plaintiff booked a trip to Alaska scheduled to start on April 4, 2020 and end on April 11, 2020 (the "Trip"). Plaintiff's trip included air travel on Alaska Airlines from New York, NY to Seattle, Washington and then from Seattle, Washington to Anchorage, Alaska and from Anchorage, Alaska to Cordova, Alaska, his ultimate destination. He reserved seven days of helicopter skiing with Point North Heli-Adventures, Inc., an Alaska Corporation located at Cordova, Alaska. The cost of the Trip was prepaid by Davis at a cost of $6,323.50, excluding the cost of air travel to and from New York to Alaska. Including air travel, the total cost of the trip is $7,097.61.

16. On March 22, 2020, Davis applied for and was issued a travel insurance from World Nomads, Plan Number N 300E (the "Policy"), pursuant to which the Defendants agreed to,

among other things, reimburse Davis for costs associated with the cancellation or delay of the Trip. The Policy was underwritten by Nationwide and administered by Trip Mate. A true and correct copy of the policy is annexed hereto as Exhibit A.

17. The Policy sets forth coverage for Trip Cancellation and provides in relevant part: "The Company will pay a benefit, up to the maximum shown on the Confirmation of Coverage, if You are prevented from taking Your Covered Trip due to…." specified events.

18. The Policy identifies specific events which would result in payment of a benefit for trip cancellation, including the insured being "quarantined."

19. The Policy does not define what it means to be "quarantined." Without a definition in the policy, "quarantined" may reasonably mean to be prevented by a government order from traveling to or from a specified area, except for specific reasons.

20. The Policy also identifies as an event that will qualify for payment of a benefit for Trip Cancellation "Natural disaster at the site of Your destination that renders Your destination accommodations Uninhabitable."

21. "Natural Disaster" is not defined in the Policy. Without a provided definition, "natural disaster" may reasonably mean a declared federal disaster and/or national emergency, such as COVID-19. "Uninhabitable" also is not defined. Without a provided definition, "uninhabitable" may reasonably mean not legally permitted to enter or stay in.

22. The Trip Delay benefit in the Policy is described as follows:

> The Company will reimburse You for Covered Expenses on a one-time basis, up to the maximum shown in the Confirmation of Coverage, if You are delayed en route to or from the Covered Trip for six (6) or more hours due to a defined Hazard:
> Covered Expenses include:
> a) Any prepaid, unused, non-refundable land and water accommodations; or
> b) Any reasonable additional expenses incurred.

4

23. Under the Policy, "Hazard" is defined to include, among other things, any delay due to "quarantine" or "natural disaster."

24. The maximum benefit amount under the policy is set out as follows:

Trip Cancellation -　　　　　　Up to Trip Cost

Single Occupancy -　　　　　　Included

Trip Interruption -　　　　　　Up to Trip Cost

Trip Delay (Up to $250 Per Day) -　$1,500

25. Upon information and belief, the policies issued by the Defendants are uniform in their terms and coverage.

B. **COVID-19 and Government Orders**

26. COVID-19 is a highly contagious airborne virus that has rapidly spread and continues to spread across the United States. The virus has been declared a pandemic by the World Health Organization ("WHO").

27. COVID-19 is a public health crisis that has profoundly affected all aspects of society, prompting various federal agencies and governmental authorities to issue orders and guidance designed to slow the pace at which the virus is transmitted.

28. On January 30, 2020, the WHO declared COVID-19 a Global Health Emergency.[1]

29. On February 29, 2020, the first death of COVID-19 was reported in the United States.[2]

---

[1] See, https://www.who.int/news/item/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (delcaring the outbreak of 2019-nCoV constitutes a Public Health Emergency of International Concern)
[2] William Mansell and Erin Schumaker, President Trump confirms 1st known death in US from coronavirus, ABCNEWS, Feb. 29, 2020, https://abcnews.go.com/US/high-school-student-washington-latest-coronaviruscommunity-spread/story?id=69301655.

30. On March 11, 2020, the WHO announced that COVID-19 was categorized as a pandemic.[3]

31. In March and April 2020, New York was considered the epicenter of the COVID-19 pandemic in the United States. In response to the outbreak, Governor Andrew Cuomo issued an emergency order effective March 22, 2020 which, among other things (1) ordered that all non-essential businesses close, (2) banned any non-essential gathering of any size for any reason, and (3) limited any concentration of individuals outside their home to workers providing essential services.[4]

32. On or about March 20, 2020, President Trump declared New York State a major disaster area due to the COVID-19 pandemic in the State of New York.[5]

33. On March 13, 2020, President Donald Trump declared the COVID-19 virus a National Emergency, which began on March 1, 2020.[6] The Federal Emergency Management System ("FEMA") reported that the President declared the ongoing COVID-19 pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to §501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act").[7]

---

[3] WHO Director-General's opening remarks at the media briefing on COVID-19, Mar. 11 2020, https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[4] *See* "Governor Cuomo Signs the 'New York State on PAUSE' Executive Order," at https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order

[5] *See* "President Donald J. Trump Approves New York Disaster Declaration," at https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-approves-new-york-disaster-declaration-5/

[6] *See* "Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak" at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

[7] *See* News Release, COVID-19 Emergency Declaration, FEMA (Mar. 13, 2020), https://www.fema.gov/newsrelease/20200726/covid-19-emergency-declaration.

34. On or about March 23, 2020, Governor Mike Dunleavey of Alaska issued an order, among other thing, ordering that all travelers arriving from out of state quarantine for 14 days.[8]

35. On or about March 27, 2020, Governor Dunleavey issued an order prohibiting intrastate travel except for essential workers.[9]

36. On April 9, 2020 President Trump declared that a major disaster exists because of the COVID-19 pandemic in the State of Alaska.[10]

37. The Centers for Disease Control and Prevention ("CDC"), amongst its other functions, provides guidance for travel during COVID-19. In its guidance, the CDC warned "[t]ravel increases your chance of getting and spreading COVID-19. Staying home is the best way to protect yourself and others from COVID-19."[11] This guidance was in effect during the scheduled Trip.

38. The Orders of the Governors of the State of New York and Alaska, as well as the guidance from the CDC, amount to a Quarantine as defined by the Policy.

39. Other states issued similar orders, proclamations, and travel restrictions, and the travel guidance from the CDC was available and applicable to residents of all states.

---

[8] *See* https://www.documentcloud.org/documents/6817949-200323-Mandate-10.html

[9] *See* https://www.documentcloud.org/documents/6817949-200323-Mandate-10.html

[10] *See* President Donald J. Trump Approves Alaska Disaster Declaration, at https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-approves-alaska-disaster-declaration-5/

[11] *See Travel during the COVID-19 Pandemic*, Centers for Disease Control and Prevention, Aug. 26, 2020, https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html.

40. Further, all states and territories of the United States have been approved for "major disaster declarations" by President Trump.[12] The disaster declarations and the global impact of COVID-19 amount to a "natural disaster" under the Policy.

### C. **Plaintiff's Claims for Benefits Under the Policy Were Wrongfully Denied**

41. Plaintiff planned and paid for the Trip and Policy prior to the aforementioned proclamations, orders, and guidance coming into effect.

42. In response to the aforementioned orders and proclamations, on or about March 23, 2020, Point North Heli-Adventures, Inc., cancelled all operations, including Plaintiff's trip.

43. Davis's trip to Alaska was not permitted under the Alaska orders in place, including Governor Dunleavey's directive that all visitors to Alaska quarantine for 14 days, and that tour operators should immediately cease operations for out of state travelers.

44. As a result of such cancellation, Davis incurred losses in the form of forfeited, prepaid, non-refundable, non-refunded, and unused payments.

45. On or about April 14, 2020, Davis submitted a claim for reimbursement of expenses for forfeited, prepaid, non-refundable, non-refunded, and unused payments.

46. On or about June 15, 2020, TripMate denied Davis's claim.

47. On or about June 16, 2020, Davis appealed the denial of his claim.

48. By letter dated October 23, 2020, TripMate, acting as claims administrator, denied Davis's appeal. In its letter (addressed to a Mr. and Mrs. Egan but sent to Davis), TripMate stated that because the Alaska "self-quarantine order did not prohibit individuals or families from leaving their homes or place of quarantine for things such as food and medical attention, but merely called for social distancing measures and the travel restrictions imposed by the government in hopes to

---

[12] *See* COVID-19 Disaster Declarations, FEMA, https://www.fema.gov/disasters/coronavirus/disaster-declarations

stop the spread of the Coronavirus are not covered reasons listed in the plan, this claim is not covered by the plan provisions." A copy of the appeal denial letter is annexed hereto as <u>Exhibit B</u>.

49. TripMate's reliance on the permission under the Alaska quarantine order for individuals to leave their homes or place of quarantine for food and medical attention is unpersuasive.

50. Quarantine is not a defined term in the Policy.

51. Twice in the sentence explaining its reason for denial of Davis's claim, TripMate uses the word quarantine to describe the order in place at the time of the Trip. TripMate's self-proclaimed limitation of the term "quarantine" to exclude quarantines *that permit travel to obtain food and medical attention* is not a valid basis for denying Plaintiff's claim.

52. Despite expressly acknowledging that Davis's travel was prevented by a "self-quarantine order" Defendants refused to provide coverage under the Policy.

## CLASS ALLEGATIONS

53. Davis brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid for and/or obtained a travel protection policy from the Defendants, and whose claims for reimbursement were denied by or on behalf of Defendants after their trips were cancelled due to COVID-19, or COVID-19-related government stay at home orders, proclamations and/or guidance (the "Class").

54. Excluded from the Class are Defendants, Defendants' agents, subsidiaries and affiliates, their officers, directors, and members of their immediate families, and any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns

of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

55. Plaintiff reserves the right to modify or amend definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

56. The requirements of Rule 23(a)(1) have been met. The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to, the sales and transaction records that Defendants have access to and/or own.

57. The requirements of Rule 23(a)(2) have been met. There is a well-defined community of interest and there are common questions of fact and law affecting members of the Class. The questions of fact and law common to the Class predominate over questions, which may affect individual members and include the following:

a) Whether such governmental orders, proclamations, guidance, and/or self-enforced isolation constitute – either individually or collectively –"Quarantine" within the meaning of Defendants' policies;

b) Whether the COVID-19 pandemic, disaster declarations, governmental orders, proclamations, and/or guidance, constitute – either individually or collectively – a "natural disaster" within the meaning of Defendants' policies;

c) Whether Defendants' denials of the claims submitted by Plaintiff and the members of the Class were premeditated and the product of a coordinated effort to: (i) dissuade Plaintiff and

the other members of the Class from submitting and/or pursuing claims under their policies; and/or (ii) to limit the Defendants' losses arising from such claims; and

d)      Whether Plaintiff and members of the Class are entitled to damages, punitive damages, costs, and/or attorneys' fees for Defendants' acts and conduct.

58. The requirements of Rule 23(a)(3) have been met. Plaintiff's claims are typical of the claims of the members of the Class. The claims of Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct.

59. Plaintiff and members of the Class were each customers of Defendants, each having applied for and purchased a travel insurance policy that is substantially identical in all material respects from the Defendants. Each likewise submitted a claim under their policies, and each such claim was denied on the basis that the claims were not covered under the policies.

60. The requirements of Rule 23(a)(4) have been met. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class members are substantially identical, as explained above. While the aggregate damages that may be awarded to the members of the Class are likely to be substantial, the damages suffered by the individual members of the Class are relatively small. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Certifying this action as a class action will centralize these substantially identical claims in a single proceeding, which is the most manageable litigation method available

to Plaintiff and the Class and will conserve the resources of the parties and the court system, while protecting the rights of each member of the Class. Defendants' uniform conduct is generally applicable to the Class as a whole, making relief appropriate with respect to each Class member.

FIRST CAUSE OF ACTION
(Breach of Contract)

61.	Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph 1 through 60 above with the same force and effect as if fully set forth herein.

62.	The policies are a valid and binding contract for which Plaintiff and members of the Class paid material consideration in the form of a premium.

63.	Pursuant to the terms and conditions of the policies, the forfeited, prepaid, nonrefundable, non-refunded, and unused payments are specifically covered thereunder.

64.	The Defendants have materially breached the policies by failing and refusing to reimburse Plaintiff and members of the Class for any of their forfeited, prepaid, non-refundable, non-refunded, and unused payments. The aforementioned material breaches have damaged, and will continue to damage, Plaintiff and members of the Class.

65.	Plaintiff and members of the Class have performed all of their obligations under the policies, and any and all conditions precedent to coverage under the policies for the forfeited, prepaid, non-refundable, non-refunded, and unused payments have been satisfied, waived, or revoked, and/or the Defendants are estopped from enforcing them at this time.

SECOND CAUSE OF ACTION
(Declaratory Judgment)

66. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph 1 through 65 above with the same force and effect as if fully set forth herein.

67. Under the Declaratory Judgment Act, 28 U.S.C. §§2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, which are tortious and violate the terms of the federal and state statutes described herein. Plaintiff and members of the Class seek a judicial determination of an actual controversy regarding coverage for their forfeited, prepaid, non-refundable, non-refunded, and unused payments caused by a cancellation, delay, or interruption of their trips due to COVID-19.

68. The term "Quarantine" is used throughout the Policy and is not defined within the Policy. As such, it must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

69. Defendants acknowledge in their denial of appeal letter that Alaska, where Davis was to travel, was under a quarantine order, yet refused to provide coverage.

70. The phrase "natural disaster" is used throughout the Policy. "Natural disaster" is not defined within the Policy. As such, it must be given its ordinary and plain meaning as informed by, *inter alia*, its dictionary definition and the intent of the parties, as well as the custom in the industry or usage in the trade.

71. Based on the relevant Policy language and the facts, Plaintiff's and Class members' losses of forfeited, prepaid, non-refundable, non-refunded, and unused payments arise from a "Quarantine" and "natural disaster" within the meaning of the policies and – as such – trigger the Trip Cancellation benefits under the policies.

72. Declaratory relief from this Court will resolve the aforementioned controversy and dispute.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Davis respectfully request that this Court enter judgment in favor of Plaintiff and the Class and against Defendants by:

(a) Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) Finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) Awarding damages in an amount to be determined by the trier of fact;

(d) Ordering restitution and all other forms of equitable monetary relief;

(e) Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(f) Awarding pre- and post-judgment interest on any amounts awarded; and,

(g) Awarding such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated: New York, New York
February 11, 2021

                                                             Morrison Tenenbaum, PLLC

                                    By:    /s/ Joshua S. Androphy
                                             Joshua S. Androphy
                                             87 Walker Street, 2nd Floor
                                             New York, NY 10013
                                             Telephone: (212) 620-0938
                                             Facsimile: (646) 998-1972
                                             Email: jandrophy@m-t-law.com
                                             *Attorneys for Plaintiff*